# F I S H E R | T A U B E N F E L D LLP

225 Broadway, Suite 1700
New York, New York 10007
**Main** 212.571.0700
**Fax** 212.505.2001
www.fishertaubenfeld.com

Writer's direct dial: (212) 571-0700 ex. 102
Writer's email: michael@fishertaubenfeld.com

November 7, 2017

**VIA ECF**
Honorable James Orenstein
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Oliveira *et al.* v. Vali Industries, Inc. *et. al.*
Case No.: 17-cv-01528 (AMD)(JO)

Dear Judge Orenstein:

We represent Plaintiffs in the above-captioned matter. In accordance with the Court's October 17, 2017 order, the parties write to respectfully request that the Court approve their settlement as fair and reasonable and so order the Stipulation of Dismissal that is attached as **Exhibit 1**. Consistent with the Court's instructions, the parties revised the settlement agreement to remove from the release any reference to unknown claims. Further, in accordance with ample precedent in this Circuit, my firm is reducing our fees to twice the lodestar, net of costs.

## 1. Modifications to the Agreement Based on the Court's Instructions at the October 17, 2017 Conference.

At the October 17, 2017 conference, the Court expressed concern regarding the breadth of Plaintiffs' release of claims, as well as the amount of attorneys' fees and costs. Subsequently, the parties revised their agreement, and the revised agreement is attached to this letter as **Exhibit 2**.[1]

Under the revised agreement, Plaintiffs release only their known wage-and-hour claims and not any unknown claims. In addition, Plaintiff Oliveira, who brought a number of non-wage claims, releases only his non-wage claims and not any additional or unknown claims. Further, under the revised agreement, our firm will

---

[1] The parties are submitting the unexecuted agreement for the Court's review. The parties will execute this Agreement only if the Court approves it.

1

receive $33,150. in attorneys' fees and $552.10 in costs, which is 24.1% of the total settlement after deducting costs. Importantly, we are not requesting any fees for work performed after Plaintiffs submitted the original settlement for the Court's review on October 9, 2017.

### 2. The Court Should Approve Plaintiff's Release.

Plaintiffs' release is appropriate. Under the revised agreement, Plaintiffs only release their claims in this lawsuit and no other unrelated or unknown claims. Plaintiffs' release of claims is proportionally tailored to their claims in this lawsuit, which were wage-and-hour claims and, for Oliveira, retaliation and other related claims. The parties therefore respectfully request that the Court approve Plaintiffs' release.

### 3. Background to the Lawsuit and Work Performed.

Plaintiffs are former/current employees who worked for Defendants for more than a decade performing manual labor on various Con Edison projects, but allege not to have been paid under the FLSA and NYLL (1) proper prevailing wages and benefits for many weekend hours they worked; and (2) for the work they performed in Defendants' company shop each morning and their travel to and from the job site. Plaintiffs asserted that they were third-party beneficiaries of contracts between Con Edison and Defendants, which required the payment of prevailing wages for work requiring opening a street under NYC Administrative Code § 19-142. Plaintiffs claimed that Defendants paid them for some of these hours in cash and did not always pay them at the proper wage and benefits rate. Plaintiffs also allege that Defendants failed to provide Plaintiffs with proper wage statements in violation of NYLL § 195. Separate from Plaintiffs' FLSA and NYLL claims, Plaintiff Espinoza also alleged a claim for failure to pay supplemental benefit payments from 2011 through 2013 when he was finally able to join the union. Plaintiff Oliveira also asserted nonwage claims relating from Defendants' conduct after his termination in July 2016, namely that Defendants blacklisted him in the industry, prevented him from finding new work and even badmouthed him and had him terminated once he was able to finally find work. Defendants deny all allegations of wrongdoing made by Plaintiffs and entered into the settlement in an effort the time and expense of protracted litigation.

The parties attempted to negotiate a settlement at the outset of the case. To facilitate settlement, Defendants provided to Plaintiffs hundreds of pages of time and pay records, which Plaintiffs used to calculate their damages. Using these records, Plaintiffs calculated that they were owed under the FLSA and/or NYLL (1) $44,405.76 for their shop and travel hours (i.e., the hours they spent working in the shop each morning and then traveling from the shop to the job site and vice versa); and (2) $73,325.18 for their unpaid prevailing wages and benefits arising out of their NYC Administrative Code § 19-142 claim. Defendants then made a number of settlement offer, culminating with Offers of Judgment served on both Plaintiffs totaling $40,000, which Defendants indicated was more than Plaintiffs could ever recover at trial.

The parties engaged in a limited amount of work while settlement was ongoing. Plaintiffs amended their complaint to add additional claims, while Defendants requested a premotion conference to discuss dismissing Plaintiffs' complaint. The parties also attended various conferences and at the time the parties consummated the settlement, Plaintiffs were on the verge of filing a request for conditional certification of a collective action. Further, the parties exchanged automatic disclosures. In addition to engaging in settlement discussions and litigating the case, my firm also spent a significant amount of time discussing this case with Plaintiffs and assuaging their concerns, as well as working with various loan companies to procure loans for Plaintiffs, both of whom borrowed money against their lawsuit. My firm did not bill for most of this time.

This Court held a settlement conference before Your Honor on September 8, 2017. The Court adeptly caucused with both sides and conveyed the various demands and offers the parties made during the conference. At the culmination of the conference, the Court advised Plaintiffs that Defendants' offer of $140,000 was their best and final offer. Subsequently, the parties agreed to settle all claims for $140,000.

### 4. The Court Should Approve Plaintiffs' Counsel's Fees.

As indicated above, my firm is requesting approximately 24.1% of the settlement, which reflects a multiplier of the lodestar of two. This request is reasonable, and Plaintiffs respectfully request that the Court approve it. Although many courts in this Circuit have employed the "percentage of the fund" method when determining attorneys' fees in the settlement context, other courts, including this Court, has applied lodestar method in some cases. Hdir v. De Quartier, No. 16-CV-6605, 2017 U.S. Dist. LEXIS 96758, *3-7 (E.D.N.Y. June 21, 2017). Under the lodestar method, when determining whether a fee is proper, the court reviews the Goldberger factors. Guzman v. Joesons Auto Parts, No. CV 11-4543 ETB, 2013 WL 2898154, at *1 (E.D.N.Y. June 13, 2013) (quoting Goldberger v. Integrated Res., Inc., 209 F.3d 43, 49 (2d Cir. 2000)). These factors are as follows:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

Guzman, 2013 WL 2898154, at *1 (numbering corrected). These factors warrant providing the fee requested.

### A. Time and Labor Expended.

As indicated in their October 9, 2017 letter, in calculating the lodestar, Plaintiffs billed for the following hours at the following rates:

| Name | Regular Hours | Regular Hourly Rate | Total |
|---|---|---|---|
| Michael Taubenfeld | 39.7 | $350.00 | $13,895.00 |
| Cybill Echegoyen | 33.5 | $80.00 | $2,680.00 |
| Total | | | $16,575.00 |

As noted in Plaintiffs' October 9, 2017 letter, the hourly rates requested fall squarely within the rates approved by courts in this District. See, e.g., DE 25, pp.5-6; see also Fawzy v. Gendy, No. 12 CV 5580 BMC, 2013 WL 5537128, at *2 (E.D.N.Y. Oct. 6, 2013) (awarding $350 to a partner in a FLSA case); Alvarez v. 894 Pizza Corp., No. 14-CV-6011 (JBW), 2016 WL 4536574, at *7 (E.D.N.Y. Aug. 2, 2016) (awarding $80 to paralegals).

We acknowledge that this case settled early before motion practice or extensive discovery.  We further acknowledge that some courts, including this Court, have reduced fees in certain cases when the case settled early, presumably concerned that attorneys would receive a windfall.  Guzman, 2013 WL 2898154, at *4 (reducing fee to 25% of settlement for the named plaintiff in part because the case settled early); Hdir, 2017 U.S. Dist. LEXIS 96758, *3-7 (awarding lodestar).  Other courts have not, however, noting that reducing fees because of early settlement has the "potential to create a disincentive to early settlement."  Hyun v. Ippudo USA Holdings, No. 14-CV-8706 (AJN), 2016 WL 1222347, at *3 (S.D.N.Y. Mar. 24, 2016) (quoting McDaniel v. Cty. of Schenectady, 595 F.3d 411, 418 (2d Cir. 2010)); Martinez v. SJG Foods LLC, No. 16-CV-7890 (RA), 2017 WL 4676828, at *2 (S.D.N.Y. Oct. 16, 2017) (approving fees "given the swift resolution of this case and the Court's desire to avoid creating a disincentive to early settlement.") (internal quotations omitted); see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005) (noting that the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.").  Indeed, early settlement benefits everyone involved in a lawsuit: plaintiffs got paid earlier, defendants save unnecessary attorneys' fees, and the court preserves scarce judicial resources.  Plizga v. Little Poland Rest. Inc., No. 15CV08820LAKBCM, 2016 WL 9307474, at *5 (S.D.N.Y. July 18, 2016) (the parties "reached a settlement agreement in principle—without the aid of the Court—before the initial pretrial conference, which was never held. The settlement negotiations themselves were "extensive," however, and based in part on payroll records and other documents provided informally by defendants. There is much to be admired in this approach, which conserves both attorney time and judicial resources.")

Plaintiffs respectfully contend that a multiplier of two in this case balances

4

the concern of a windfall against the disincentivizing early settlement. As one Court in this District noted earlier this year "[c]ourts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements." Pucciarelli v. Lakeview Cars, Inc., No. 16CV4751RRMRER, 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017) (Mauskopf, J.); see also Hall v. ProSource Techs., LLC, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *15 (E.D.N.Y. Apr. 11, 2016) (Locke, M.J.) (awarding a lodestar of 2.01). There is risk in any FLSA case, and plaintiffs' counsel, who take such cases on a contingency basis, should be compensated for such risk. Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) ("In this Court's opinion, a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases. The plaintiffs' bar is presumably selective enough with the cases they take on to win a recovery in at least half of them. A multiplier near 2 compensates them appropriately.") To the extent that the Court is concerned that awarding a multiplier encourages "counsel to settle a case prematurely once their opportunity costs begin to rise" that is not a concern here. McDaniel, 595 F.3d at 419. As the Court will recall, this Court advised Plaintiffs at the settlement conference that Defendants strongly indicated that $140,000 was their best and final offer. Further negotiations at this stage of the litigation, therefore, would have been futile. While Defendants may have offered more as the case proceeded, especially if other plaintiffs joined this action through the collective action mechanism, litigating the case further would have delayed recovery for Plaintiffs, who expressed a clear preference for early settlement. As a result, Plaintiffs believe that a lodestar of two is warranted here.

## B.  Other Goldberger Factors.

The other factors warrant awarding a multiplier of two. The magnitude and complexity of the case and the risk of litigation warrant a multiplier. Although Plaintiffs' unpaid shop-and-travel time claims involved relatively straightforward FLSA issues, Plaintiffs' unpaid prevailing wages and benefits claim was more complex and risky than a standard FLSA case. Prevailing wage cases require identifying the specific wage and supplemental benefits rates applicable to the category of work Plaintiffs worked in. In addition, in this case Plaintiffs were forced to proceed under an obscure New York Code provision, NYC Administrative Code § 19-142, which appears to not have been litigated since the 1940s. Because this case is more complex and risky than most FLSA cases, this factor points towards a multiplier of 2.

Quality of representation also warrants a multiplier. As indicated in Plaintiffs' October 9, 2017 letter, I have significant experience litigating FLSA cases. See, e.g., DE 25, pp. 5-6. I estimate that I have litigated no less than 50 cases and my firm was recently appointed class counsel in Gonzalez et al v. Allied Concrete Industries Inc. et al., EDNY Case No.: 2:14-cv-4771 (JFB)(AKT). My firm diligently prosecuted this case and obtained a substantial early settlement for Plaintiffs. Further, the predecessor to my firm previously settled an identical case against the same Defendants. See, Yoly Yglesia, et. al. v. Vali Industries, Inc., et. al., Case No.: 1:11-cv-5914-MDG. It is likely that my firm's previous involvement in an identical lawsuit spurred Defendants to settle early and for more than they had originally intended.

5

Further, the requested fees in relation to the settlement is appropriate. Plaintiffs are receiving most of their FLSA damages and attorneys' fees are less than 25% of the total settlement, well within the range approved by courts in FLSA settlements. Plaintiffs' FLSA damages for unpaid shop-and-travel time and unpaid prevailing wages and benefits total $117,730.94. Under the revised agreement, Plaintiffs will receive $106,297.90, approximately 90% of their FLSA unpaid wages. Additionally, if the Court approves a multiplier of two, my firm will receive 24.1% of the total settlement after deducting costs, which is well within the range of FLSA settlements approved by courts in this Circuit. Guzman, 2013 WL 2898154, at *4 (awarding 25% of settlement); Wang v. Masago Neo Asian Inc., No. CV 14-6249(DRH)(ARL), 2016 WL 7177514, at *4 (E.D.N.Y. Sept. 26, 2016) (noting that a one-third fee arrangement in FLSA settlement cases is "routinely approved by courts in this Circuit").

Finally, public policy considerations warrant awarding a multiplier of two. The "primary public policy consideration—incentivizing *capable* counsel" to take FLSA cases— Flores v. Mamma Lombardi's of Holbrook, Inc., 104 F. Supp. 3d 290, 309 (E.D.N.Y. 2015) (emphasis in original), warrants providing sufficient fees that capable counsel would take such cases. However, should the courts only award the lodestar, especially at the below market rates permitted in this District, that would disincentivize attorneys from taking such cases. Indeed, this is especially true, given the general policy among courts in this Circuit to decline to award more than one-third even when the lodestar exceeds one-third. Santos v. EL Tepeyac Butcher Shop Inc., No. 15-CV-814 (RA), 2015 WL 9077172, at *3 (S.D.N.Y. Dec. 15, 2015) (courts decline "to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances). The end result would be that attorneys would receive the *lower* of (1) their lodestar or (2) one-third of the settlement. A natural consequence will be that only inexperienced or less capable attorneys who are unable to obtain better work will take such cases, which, as inexperienced attorneys learn how to litigate such cases, will increase the parties' costs and add to the court's burden.

For example, my firm primarily represents plaintiffs in employment law cases. However, a small part of the practice is representing employers in FLSA and other employment law matters. My firm regularly bills my time between $400 and $475 per hour for such work and clients provide retainer fees at the outset of cases that my firm bills against. I have a passion for representing employees and have made a career out of doing so. Virtually all my firm's advertising is employee-focused and those are the cases I wish to bring. But should the default fee award in FLSA settlements be a *maximum* of the lodestar at $350 an hour, the economics will quickly dictate that I refocus my practice on representing employers. Employers pay at a higher hourly rate, provide a retainer fee at the outset of the case, and pay bills regularly. There is no risk of nonpayment should I lose the case. Although there is a financial risk that my client would be unable to pay my firm's bills, courts regularly permit attorneys to withdraw if the client does not pay his or her bills. The risk is much larger when representing plaintiffs because we often do not learn of the employer's severe financial difficulties until after a significant amount of work has been performed.

Another unfortunate consequence of courts declining to provide a multiplier is that plaintiffs' attorneys will likely focus on individual FLSA cases rather than larger cases or collective actions. If the attorney will get paid the lodestar no matter how large the settlement, there is no incentive to take multi-plaintiff cases, which are often more complex and involve managing conflicts and difficult personalities. Nor is there are incentive to move for conditional certification of a collective action. Congress has expressly indicated its desire "to permit plaintiffs . . . the opportunity to proceed collectively." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 486, 107 L. Ed. 2d 480 (1989). Indeed, "a collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources[,] and [t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." Id. Courts should decline to disincentivize attorneys from pursuing these important congressional goals.

For all these reasons, the Court should permit a multiplier of two and approve attorneys' fees and costs.

           *               *               *

Accordingly, the Court should approve the settlement as fair and reasonable.

Thank you for your attention to the above.

Respectfully Submitted,

--------------/s/--------------
Michael Taubenfeld (MT4640)

7